1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SARAH E. BUSH, an individual,                    CASE NO. 10CV1188-LAB (RBB)

12                                    Plaintiff,      **ORDER GRANTING MOTION TO PROCEED *IN FORMA***
            vs.                                        ***PAUPERIS*; AND**
13

14                                                    **ORDER DENYING *EX PARTE* APPLICATION FOR TEMPORARY**
     THE CITY OF SAN DIEGO, et al.,                   **RESTRAINING ORDER**
15

16                                    Defendants.

17

18          The Court held an emergency hearing on Plaintiff's Application for a Temporary

19   Restraining Order on June 4, 2010 and denied the Application.  This Order memorializes the

20   Court's findings announced at that hearing.

21          Plaintiff Sarah Bush[1] is the organizer of the San Diego Naked Bicycle Ride (the

22   "Ride"), scheduled for June 12, 2010 between 5 and 7 p.m.  The date is firm; it's the same

23   date other Naked Bicycle Rides are scheduled around the world, all with the purpose of

24   protesting "petroleum based transportation systems and technology." (Compl. ¶ 8.)  As

25   Plaintiff describes it, the protest "is comprised of adults who strip naked, paint slogans on

26   _____

27          [1] Ms. Bush filed a motion to proceed *in forma pauperis* along with her TRO request, which the Court neglected to rule on at oral argument.  That motion is **GRANTED**.

28
                                              - 1 -                                    10CV1188

1  their bodies, and ride bicycles along a 10-mile route between Hillcrest and Downtown San

2  Diego." (*Id.*)

3       Plaintiff's problem is that San Diego has an anti-nudity ordinance which the ride will

4  undoubtedly violate, and San Diego officials have warned Plaintiff they'll enforce it on June

5  12, whether by issuing citations, arresting riders, or otherwise interfering with the ride.

6  Plaintiff has asked the Court to issue a TRO forbidding the police from taking such actions

7  on the ground that enforcement of the anti-nudity ordinance would violate her First

8  Amendment rights.[2]

9       The anti-nudity ordinance, in relevant part, says:

10          Nudity Prohibited.  No person over the age of ten years shall be
            nude and exposed to public view in or on any public right of way,
11          public park, public beach or waters adjacent thereto, or other
            public land, or in or on any private property open to public view
12          from any public right of way, public beach, public park, or other
            public land.
13

14  San Diego Municipal Code § 56.53(c).  One of the explicit purposes of the ordinance is to

15  prevent members of the public from being "unwillingly exposed" to and offended by nudity.

16  *Id.* at § 56.53(a).[3]  Much of the case law addressing the intersection of nudity prohibitions

17  and the First Amendment involves cases in which strip clubs argue that the former violates

18  the latter.[4]  This isn't that kind of case.[5]  In fact, it seems obvious that nudity isn't so much

19  _____

20       [2] Plaintiff filed an Application for Preliminary Injunction, which the Court construes as
     a TRO request given the time constraints she faces, as well as the fact that the Application
21   was not noticed.  *See* Fed. R. Civ. P. 65(b).

22       [3]  Subsection (a) also notes that the anti-nudity ordinance is enacted "for the purpose
     of securing and promoting the public health, morals, and general welfare of all persons in
23   the City of San Diego."

24       [4] *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) (Pennsylvania anti-nudity
     ordinance forbidding complete nudity, in effect requiring dancers in strip clubs to wear
25   "pasties" and "G-strings," did not violate First Amendment); *Barnes v. Glen Theatre, Inc.*, 501
     U.S. 560 (1991) (Indiana public indecency statute requiring erotic dancers to wear pasties
26   and G-strings did not violate First Amendment); *Triplett Grille, Inc. v. City of Akron*, 40 F.3d
     129 (6th Cir. 1994) (public indecency ordinance challenged by strip club swept too broadly,
27   in violation of First Amendment); *Nite Moves Entertainment, Inc. v. City of Boise*, 153
     F.Supp.2d 1198, 1210 (D. Idaho 2001) (public nudity ordinance that would ban anything

28
10CV1188

1   *the* message that Plaintiff wants to convey as it is a means of amplifying their primary

2   message, which seems to be, "America is too dependent on oil, to our great ecological

3   detriment."   Nudity has the potential to amplify that message only because it naturally

4   amplifies *any* message by attracting attention and publicity.  Plaintiff's message is otherwise

5   old hat.

6          Bush argues that by riding nude, ride participants are likely to advance the utilitarian

7   end of calling attention to their cause.  Her TRO request identifies the following issues about

8   which she hopes the ride will stimulate awareness and discussion:

9          •   Fragility of the human body and sanctity of life
           •   Safety of bicyclists while sharing roads with motorists
10         •   Effects of vehicle emissions on human health and the environment
           •   Effects of our current transportation system and technology on culture
11             and the human spirit
           •   Threat to national security due to dependence on foreign oil
12         •   Beauty and inherent decency of the human body
           •   Use of public nudity to affect social change

13

14   It's hard to see how all of these fit together, and particularly how nudity and the "inherent

15   decency of the human body" relate to a normative message of oil independence.  Does

16   nudity, by itself, communicate an intelligible message such that there a First Amendment

17   right to be naked?  The Supreme Court has already weighed in on this question, and has

18   answered "no": "Being 'in a state of nudity' is not an inherently expressive condition." *City*

19   ──────────────

20   more revealing than "short shorts and a modest bikini top" violated First Amendment).

21        [5] In fact, San Diego's anti-nudity ordinance carves out an exception for nude dancing
     in places that are closed to the wandering public's view:

22        The provisions of this section shall not apply to live theatrical performances
23        performed in a theater, concert hall, or other similar establishment located
          on public land.  As used in this section, theater, concert hall, or similar
24        establishment means a building, playhouse, room, hall or other enclosed
          space not open to public view from any public right of way but having a stage
25        upon which movable scenery is located and theatrical, vaudeville, or similar
          performances are given and seats so arranged that a body of spectators can
26        have an unobstructed view of the stage and whose primary function is to give
          such performances.

27   San Diego Municipal Code  § 56.53(d).

28
                                          - 3 -                                    10CV1188

1   *of Erie*, 529 U.S. at 289. Here, as in *City of* Erie, the link between the riders' nudity and their

2   message is similarly attenuated.[6]

3       To obtain the relief she seeks, Bush must establish that she's likely to prevail on the

4   argument that San Diego's anti-nudity ordinance violates the Constitution.[7] *Winter v. Natural*

5   *Resources Defense Counsel, Inc.*, 129 S.Ct. 365, 374 (2008) (standard for injunctive relief).

6   After giving respectful consideration to Plaintiff's arguments, the Court concludes the

7   converse is true: it is highly *unlikely* she will prevail on the merits. For this reason, the Court

8   **DENIES** Plaintiff's request for a TRO.

9       Plaintiff argues the ordinance is overbroad, but the overbreadth doctrine is of no help

10   to her. "Ordinarily, the principal advantage of the overbreadth doctrine for a litigant is that

11   it enables him to benefit from the statute's unlawful application to *someone else*." *Board of*

12   *Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483 (1989). *See also Board of Airport*

13   *Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987). Here, in contrast, Plaintiff's

14   primary concern is that San Diego's anti-nudity ordinance infringes upon *her own* protected

15   speech. In fact, she doesn't identify anyone else whose arguably legitimate speech may be

16   threatened by the ordinance.

17       The real issue Plaintiff's TRO request presents is what level of scrutiny the Court

18   should apply in evaluating her First Amendment challenge? To determine that, the Court

19   initially asks whether the ordinance is related to the suppression of expression. *Texas v.*

20   *Johnson*, 491 U.S. 397, 403 (1989). If it's not, it need only pass a four-part test from *United*

21   *States v. O'Brien*, 391 U.S. 367 (1968) for restrictions on symbolic speech. Under *O'Brien*,

22   a government regulation is sufficiently justified if: (1) it is within the constitutional power of

[6] The most plausible connection, which is still thin, is that nudity plays into the theme, captured by a message of oil independence, that people ought to rely less on technological innovation and more on natural systems to meet their most basic needs in ways that are ecologically sustainable.

[7] Plaintiff must also show: (1) she's likely to suffer irreparable harm in the absence of preliminary relief; (2) the balance of equities tips in her favor; and (3) the relief she seeks is in the public interest. *Winter*, 129 S.Ct. at 374.

- 4 -     10CV1188

1  the Government; (2) it furthers an important or substantial government interest; (3) the

2  government interest is unrelated to the suppression of expression; and (4) the incidental

3  restriction on alleged First Amendment freedoms is no greater than is essential to the

4  furtherance of that interest. *Id.* at 377.

5        No matter what Plaintiff may believe about the incidental effects of the ordinance on

6  her speech, it isn't in any way related to suppressing expression.  The ordinance merely

7  prohibits public nudity, and by its terms regulates conduct alone.  Nothing in the text

8  suggests a purpose to suppress speech *or* any particular message.  To the contrary, the

9  ordinance was enacted "for the purpose of securing and promoting the public health, morals

10  and general welfare of all persons in the City of San Diego," as well as to prevent residents

11  of San Diego from being "unwillingly exposed" to nudity and taking offense to it.  San Diego

12  Municipal Code § 56.63(a).[8]  The *O'Brien* test therefore applies to Plaintiff's claim that the

13  San Diego ordinance violates her First Amendment rights.

14        Plaintiff doesn't dispute that the City of San Diego had the authority to enact the anti-

15  nudity ordinance.  And, the text of the ordinance explains that one of its several purposes

16  is to promote public health, morals and general welfare.  San Diego Municipal Code §

17  56.53(a).  The Supreme Court has explained that a city's "efforts to protect public health and

18  safety are clearly within the city's police powers."  *City of Erie*, 529 U.S. at 296.  The first

19  *O'Brien* factor is satisfied.

20        *O'Brien* next requires that there be a substantial government interest supporting the

21  regulation.  The San Diego ordinance identifies two: preventing offense to those unwillingly

22

23       [8] San Diego's anti-nudity ordinance prohibits nudity only in places that are truly public (streets, parks, beaches, etc.), as well as on private property that is visible from truly public

24  places.  San Diego Municipal Code § 56.53(c).  That is consistent with one of its stated purposes, namely that nudity may be offensive to people who are "unwillingly exposed" to

25  it. It also distinguishes this case from *Triplett* and *Nite Moves*, both of which found that anti-nudity ordinances violated the Constitution — and both of which Plaintiff relies on.  The

26  plaintiffs in these cases were strip clubs, and the ordinances at issue were more aggressive than San Diego's.  For example, the ordinance at issue in *Triplett* prohibited nudity "in a

27  public place," which it defined as "any street, sidewalk, right of way and *any public or private building where the general public is invited*."  *Triplett*, 40 F.3d at 131 (emphasis added).

28
10CV1188

1   exposed to nudity *and* promoting the public health, morals, and general welfare.  Although

2   Plaintiff argues that the likelihood of others taking offense can't be grounds for restricting

3   speech, citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) (overturning

4   injunction restricting speech of antiabortion protestors) and *Collin v. Smith*, 578 F.2d 1197

5   (7th Cir. 1978) (invalidating ordinance prohibiting dissemination of materials promoting hate),

6   the ordinance really isn't directed at expression at all, and therefore doesn't seek to avoid

7   offending people with speech.[9]  Rather, it seeks to avoid offending people with nudity, which

8   the Supreme Court has held is not speech.  *City of Erie*, 529 U.S. at 289.

9           Regardless of whether the Court agrees that protecting citizens from unwanted

10  exposure to nudity is itself a substantial government interest, public safety surely is.  Naked

11  people can and do draw crowds, some of whom may react to their presence in hostile or

12  disorderly ways.  Crowds also present a public safety hazard in their own right, in that they

13  distract people's attention from their immediate surroundings, which is uniquely dangerous

14  on public streets and rights of way.  *See*, *e.g.*, *Schenck v. Pro-Choice Network of W. N.Y.*,

15  519 U.S. 357, 376 (1997) (recognizing government has a substantial interest in "promoting

16  the free flow of traffic on streets and sidewalks"); *Long Beach Area Peace Network v. City*

17  *of Long Beach*, 574 F.3d 1011, 1022 (9th Cir. 2009) (recognizing "a somewhat greater

18  governmental interest in regulating expressive activity on city streets because of the public

19  safety concerns raised by vehicular traffic").  The intended course for the Naked Bicycle Ride

20  is along well-traveled streets and through densely areas of the City of San Diego. It is a sure

21  bet the ride will distract drivers, and distracted drivers present an obvious public safety

22  concern. Drivers are simply not at liberty to avert their eyes.  Finally, the text of the ordinance

23  specifically mentions public health, and it's not far-fetched to conclude that objective is

24  furthered by prohibiting naked throngs of bicyclists from crowding the streets, thereby

25  enhancing the possibility of accidents.  For all these reasons, the Court finds the anti-nudity

26  //

27

28          [9] It's worth adding that in both *Madsen* and *Collin* there was no dispute that the challenged ordinances actually restricted speech.

1  ordinance reasonably furthers an important government interest: safety.  It satisfies the

2  second factor *O'Brien* factor.

3  The point was made earlier, but to reiterate, the Court concludes the ordinance

4  satisfies the third *O'Brien* factor: It is unrelated to the suppression of expression.

5  That leaves the last *O'Brien* factor: whether the anti-nudity ordinance is narrowly-

6  tailored to advance the government interests just identified.  A government regulation is

7  narrowly tailored if it "targets and eliminates no more than the exact source of the 'evil' it

8  seeks to remedy."  *Russell C. Frisby, et al. v. Sandra C. Schultz, et al.*, 487 U.S. 474, 485

9  (1988).  The Supreme Court in *City of Erie* found that an erotic dancer's message wasn't

10 fatally compromised by requiring her to wear pasties and a G-string.  A similar conclusion

11 is warranted here.  The minimal clothing ride participants have to wear to comply with San

12 Diego's anti-nudity ordinance will not significantly compromise their message that oil and

13 technological dependence, and the environmental degradation that accompanies them, can

14 be avoided with a return to more native ways of living.  Even Tarzan and Jane could deliver

15 the riders' message without running afoul of the ordinance.[10]  Because the law is narrowly

16 tailored, it passes the fourth *O'Brien* test.

17 In sum, the Court concludes San Diego's anti-nudity ordinance passes the *O'Brien*

18 test, and as a result, Plaintiff isn't likely to prevail on her claim that the ordinance violates her

19 rights under the First Amendment.  That determination suffices to **DENY** Plaintiff's request

20 for injunctive relief.

21 **IT IS SO ORDERED**.

22 DATED: June 11, 2010

23

24 *Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
25 United States District Judge

26 _____

   [10] The ordinance defines nude as "devoid of an opaque covering which covers the
27 genitals, pubic hair, buttocks, perineum, anus or anal region of any person, or any portion
   of the breast at or below the areola thereof of any female person."  Translation: Even a very
28 minimal and primitive outfit can satisfy the ordinance.